# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 17, 2013

No. 12-51008

Lyle W. Cayce
Clerk

RICHARD DICKEY HAVERDA,

Plaintiff – Appellant

v.

HAYS COUNTY; HAYS COUNTY SHERIFF'S OFFICE; SHERIFF GARY
CUTLER, In His Official and Individual Capacities

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Texas

Before ELROD and HIGGINSON, Circuit Judges, and MARTINEZ, District
Judge.[*]

PHILIP R. MARTINEZ, District Judge.

Richard Haverda, a former employee of the Hays County Sheriff's Office,
appeals the district court's grant of summary judgment for failure to establish
a claim of First Amendment retaliation and on qualified immunity grounds. We
conclude that (1) Haverda has presented sufficient evidence to raise a genuine
dispute as to a material fact relating to his claim of First Amendment retaliation
and (2) Defendants are not entitled to summary judgment on the basis of
qualified immunity. We, therefore, **REVERSE** the district court's grant of

[*] District Judge of the Western District of Texas, sitting by designation.

No. 12-51008

summary judgment to Appellees and **REMAND** for further proceedings consistent with this opinion.

## I.    Facts and Proceedings

For over twenty years, Haverda was an employee of the Hays County Sheriff's Office. Haverda began his employment as a corrections officer in the Hays County Jail and was promoted to the position of Captain of Corrections in 2004. In this position, Haverda was responsible for maintaining the security of the Jail, developing procedures for proper maintenance of the Jail, and supervising the individuals maintaining the Jail. During the 2010 Hays County Sheriff's Election campaign, Haverda supported the incumbent, Sheriff Ratliff, in his race against Gary Cutler. Haverda assisted Sheriff Ratliff's campaign by placing signs in locations throughout Hays County and delivering food and water to campaign volunteers on Election Day. More notably, on October 6, 2010, the *San Marcos Record* published a letter to the editor written by Haverda in support of Sheriff Ratliff. Therein, Haverda wrote about jail inspections, the prospect of a new jail, Hays County's practice of outsourcing inmates, and the funding of the Jail. Haverda concluded the letter by stating, "Sheriff Ratliff is doing a great job. Sheriff Ratliff didn't come in here and bring a whole new staff like his alternative [c]onservative Mr. Cutler wants to do." A month later, Gary Cutler won the election, taking office as Hays County Sheriff on November 15, 2010.

Subsequently, Sheriff Cutler hired Jaime Page as his Chief Deputy. During Sheriff Cutler's first week in office, Chief Deputy Page spent a night at the Hays County Jail to view and experience the conditions at the Jail. During the overnight visit, Chief Deputy Page discovered a number of health, safety, and security issues. Outside the Jail, Chief Deputy Page noted that numerous lights were out, the Jail grounds were covered in trash, and outdated measures were being used to secure the Jail's perimeter. Inside the Jail, Page noted rat

2

feces on the floor of the infirmary and kitchen, mops sitting in buckets of rancid water, and an inoperable oven infested with roaches. Chief Deputy Page also discovered issues with the administration of the Jail. He found it problematic that the Jail Command Staff—consisting of Major Brad Robinson, Lieutenant Juan Saenz, and Haverda—all worked the same shift, which left the Jail unsupervised at times. Chief Deputy Page also discovered that inmates were being booked into the Jail without first undergoing a medical screening, that lights in the inmate cells were not turned off eight hours before breakfast was served, and that inmates were being outsourced to Guadalupe County when the Jail had the capacity to house them. Additionally, two inmates attempted to escape shortly after Chief Deputy Page's visit to the Jail; according to Chief Deputy Page, improper training and a lack of protocol were to blame.

After Chief Deputy Page's inspection and evaluation of the escape attempt, he recommended to Sheriff Cutler that all three Jail Command Staff members be terminated. Chief Deputy Page believed that all three Jail Command Staff members were equally responsible for the state of the Jail. However, Sheriff Cutler did not accept Chief Deputy Page's recommendation. Chief Deputy Page then proposed that Sheriff Cutler terminate the three Jail Command Staff members but suspend their terminations for sixty days to assess their performance in improving the Jail within that time frame. Sheriff Cutler evidently accepted this recommendation. On November 22, 2010, Chief Deputy Page informed the three Jail Command Staff members that they were being terminated because of the condition of the Jail, but explained that the terminations were suspended for a period of sixty days. Chief Deputy Page told the three Jail Command Staff members that they would retain their jobs if they worked hard and the Jail substantially improved. Chief Deputy Page and Sheriff Cutler both testified that the Jail's conditions had improved by December

2010 and January 2011. Sixty days after the three Jail Command Staff members received suspended terminations, no one was fired or demoted.

The parties contest Haverda's performance during the suspended termination period. According to Chief Deputy Page, Major Robinson and Lieutenant Saenz worked hard to improve the conditions at the Jail after being notified of their suspended terminations. Chief Deputy Page testified that while Haverda's performance had improved, it was mediocre at best and remained unacceptable. Page also testified that Haverda did not display any initiative to work, came into work at his leisure, would sit in the employee dining room for two hours at a time, kept a slovenly appearance, and sat in his office without interacting with his employees. In addition, Page testified that in December 2010, he assigned Haverda to oversee the painting of a trailer to be used for road work by the inmates. However, Haverda had not made any progress on the project by March 2011.

Haverda denies Page's allegations. Haverda testified that he dedicated himself to the Jail, completed assignments given to him, and had a professional work ethic. Haverda also denied sitting in the dining room for hours at a time during work hours, being unproductive, and keeping a slovenly appearance. In addition, Major Robinson testified that he did not recall seeing Haverda in the dining room for hours at a time, and Sheriff Cutler testified that he did not personally witness Haverda sitting in the dining room. Regarding the unfinished trailer project, Haverda offered a different explanation. Haverda testified that he asked Major Robinson about the funding for such a project and that Major Robinson told him that he would look into it. Thereafter, in February of 2011, Major Robinson informed Haverda that the project had been assigned to others.

On February 15, 2011, Major Robinson informed Haverda that he had been instructed by Chief Deputy Page to tell Haverda to "get on the train or . . .

[Haverda would] be moved to [a] maintenance [position]." Major Robinson testified that he understood the phrase to mean that Haverda needed to meet the expectations of Sheriff Cutler and Chief Deputy Page. Chief Deputy Page testified that his instruction was due to Haverda's lack of command bearing, failure to make progress on tasks, and lack of leadership. Haverda was confused about the meaning of the phrase and feared that it referred to his political activity during the campaign. On February 16, 2011, Haverda delivered a memorandum to Sheriff Cutler setting out grievances and asking him to clarify the "get on the train" statement.

On February 23, 2011, Chief Deputy Page delivered a memorandum to Haverda, its contents signed and approved by Sheriff Cutler, demoting him to the position of Corrections Officer. Therein, Chief Deputy Page wrote, "Cutler kept his promise upon his election to the office of Hays County Sheriff not to terminate any Sheriff's employees." The memorandum also described the poor conditions present at the Jail when Cutler took office and Chief Deputy Page's lack of confidence in Haverda as a leader and manager. The demotion was scheduled to become effective on March 1, 2011. Haverda appealed the demotion to Sheriff Cutler, and, on February 28, 2011, delivered a letter to Cutler notifying him that he intended to retire effective April 1, 2011. On March 15, 2011, Haverda met with Sheriff Cutler to discuss his appeal and secretly recorded the meeting. During the meeting, Sheriff Cutler mentioned his campaign promise not to fire any employees and stated that he knew Haverda had made several comments, during the campaign, about Sheriff Cutler "run[ning] everybody off." Sheriff Cutler also discussed the poor condition of the Jail and accepted Haverda's retirement.

On August 8, 2011, Haverda filed suit in the United States District Court for the Western District of Texas, alleging constitutional violations against Hays County; Hays County Sheriff's Office; and Sheriff Gary Cutler, in his official and

No. 12-51008

individual capacities.  Appellees moved for summary judgment, and the district court granted the motion.  Appellants timely appealed.

## II.    Standards of Review

### A.    Summary Judgment Standard

We review a grant of summary judgment de novo, applying the same standard as the district court. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 635 (5th Cir. 2011) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004)).  Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) (citations omitted).  A court considering a motion for summary judgment must consider all facts and evidence in the light most favorable to the nonmoving party. *Id.* (citing *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006)).  Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence. *Vaughn*, 665 F.3d at 635 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)).  In addition, a court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (citation omitted).  Finally, the Court may "affirm the district court's decision on any basis presented to the district court."  *LeMaire*, 480 F.3d at 387 (citation omitted).

B.    First Amendment Retaliation Standard

To prove a claim of First Amendment retaliation, a plaintiff must establish that "(1) [it] suffered an 'adverse employment decision'; (2) [its] speech involved 'a matter of public concern'; (3) [its] 'interest in commenting on matters of public concern . . . outweighs the [d]efendant's interest in promoting efficiency'; and (4) [its] speech motivated the adverse employment decision." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (quoting *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)).  Once a plaintiff has met his burden of showing that his protected speech was a substantial or motivating factor in the defendant's adverse employment decision, a defendant may still avoid liability by showing, by a preponderance of the evidence, that it would have taken the same adverse employment action even in the absence of the protected speech. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  An employee can, however, refute that showing by presenting evidence that "his employer's ostensible explanation for the discharge is merely pretextual." *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991).

Finally, "[s]ummary judgment should be used most sparingly in . . . First Amendment cases . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities." *Beattie*, 254 F.3d at 600 (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)); *see also* 10B *Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure* § 2732.2 (3d ed. 2013) ("[C]laims requiring a determination regarding intentions or motives are particularly unsuitable for summary adjudication. . . .  If plaintiffs claim that some conduct on the part of defendant abridged their First Amendment rights, summary judgment may be precluded because questions concerning defendant's motives or knowledge must be determined.") (footnotes omitted).

## III.  Analysis

### A.  First Amendment Retaliation Claim

In their Motion for Summary Judgment, Appellees do not contest the first three required elements for a First Amendment retaliation claim—that Haverda suffered an adverse employment action, that his speech involved a matter of public concern, and that his interest in commenting on matters of public concern outweighed Appellees' interest in promoting efficiency.  The Appellees limit their argument to whether Haverda has established (1) that his speech motivated his demotion; (2) that Appellees would not have demoted Haverda in the absence of that speech; and (3) that he was speaking as a citizen.

#### 1.  Haverda's Speech as a Motivating Factor in His Demotion

Haverda contends that the district court erred in determining that he failed to present evidence that his protected speech motivated his demotion.  As evidence, Haverda offered comments made by Sheriff Cutler during a secretly recorded meeting, language in a demotion memorandum, and testimony of statements made to Haverda that he interpreted to be political in nature.  In its analysis, the district court found that Sheriff Cutler's comments and the language in Chief Deputy Page's demotion memo were not direct evidence, and the court did not discuss the allegedly political statements.  In assessing, at the summary judgment stage, whether Haverda offered sufficient evidence to establish that his protected speech was a motivating factor in his demotion, the district court inappropriately made credibility determinations and weighed the evidence.

First, Haverda offered the following quotes from his meeting with Sheriff Cutler as proof that Sheriff Cutler harbored resentment following the Sheriff's Election: (1) "Well the deal is, [Haverda], is that—you saw the campaign.  I know you did.  I know 'cause I saw some comments you made and what not . . . ."; (2) "I think—matter of fact, I—that you made several comments I was gonna run

everybody off. . . . I know you were part of sayin' I was gonna run everybody off"; and (3) "[a] lotta people were too concerned about the outcome of the election." According to Haverda, when Sheriff Cutler mentioned Haverda's comments during the campaign, he was referring to Haverda's letter to the editor, evidencing that Sheriff Cutler was aware of the letter to the editor prior to demoting him. Haverda also argues that these statements should be interpreted as negatively referencing Haverda's campaign activity and as evidence that Sheriff Cutler had a retaliatory motive for demoting him.

Second, Haverda offered language from the demotion memorandum, written and issued by Chief Deputy Page and approved and adopted by Sheriff Cutler, that referenced Sheriff Cutler's campaign promise not to terminate any employees. Haverda argues that Chief Deputy Page's reference to Sheriff Cutler's campaign promise, which Sheriff Cutler approved and adopted, is a euphemism meant to mask retaliatory intent. Haverda claims that by referencing the campaign promise, Chief Deputy Page and Sheriff Cutler were implying that they were not going to fire him in retaliation, like Haverda wrote in his letter to the editor, but were instead going to retaliate by demoting him several levels to the position of a corrections officer.

Third, Haverda offered statements made by Sheriff Cutler and Chief Deputy Page that Haverda interpreted as having a political meaning. Specifically, Haverda offered Chief Deputy Page's and Major Robinson's testimony that Chief Deputy Page instructed Major Robinson to tell Haverda that he needed to "get on the train." Haverda argues that this statement, coupled with other statements about Haverda not "joining the team," is a reference to Haverda not supporting Sheriff Cutler politically.

No. 12-51008

a.   Sheriff Cutler's Statements During Secretly Taped Meeting

The district court considered Sheriff Cutler's statements during the secretly recorded meeting with Haverda and found that they did not constitute direct evidence that Haverda's speech was a motivating factor in his demotion. It reached this conclusion because (1) Sheriff Cutler testified that he was unsure whether he was aware of Haverda's letter at the time of the meeting, and (2) the court's review of the statements revealed that Sheriff Cutler's initial remark was the only reference to any of Haverda's campaign activities.

The district court's reasons for finding that Sheriff Cutler's statements did not constitute direct evidence are not convincing. As stated previously, at the summary judgment stage, a court must consider all the facts and evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, not make credibility determinations, and not weigh the evidence. The district court's first reason, that Sheriff Cutler testified that he was unsure whether he was aware of the letter at the time of the meeting, draws inferences in favor of Appellees, the moving party. Sheriff Cutler never testified that he had not read the letter, but merely that he was uncertain whether he had read the letter. Haverda's letter to the editor specifically stated that Sheriff Cutler planned on bringing in a whole new staff. Significantly, Sheriff Cutler admitted during the secretly recorded meeting to have seen some of Haverda's comments during the campaign, and both the letter and Sheriff Cutler's comments reference the possibility of Sheriff Cutler "running everybody off." For these reasons, the inferences that Sheriff Cutler had read Haverda's letter and that the statements were a negative reference to Haverda's letter are reasonable inferences that should be drawn in favor of Haverda, the nonmoving party.

No. 12-51008

The district court's second reason, that Sheriff Cutler's initial remark was the only reference to Haverda's campaign activities during the secretly recorded meeting, inappropriately weighs the evidence.  During the meeting, Sheriff Cutler made four references to being aware of Haverda's comments during the election and about his concern that a lot of people were too worried about the outcome of the Sheriff's Election.  While it is true that these statements are few in number, and that much of the meeting was spent discussing other subjects, their number does not strip the statements of their status as evidence.  After a court draws the inference that Sheriff Cutler was negatively referencing Haverda's letter to the editor, the amount of time spent talking about the subject during the meeting becomes an issue for the fact-finder to weigh.  A fact-finder is the party tasked with determining whether the subject's brevity in the context of the meeting affects its credibility and weight as a motivating factor for Haverda's demotion.  Furthermore, determining whether Haverda's speech motivated his demotion depends largely on Sheriff Cutler's state of mind, knowledge of which is an area exclusively within the control of Sheriff Cutler. Requiring that Haverda's letter to the editor be discussed more extensively throughout the meeting in order for Sheriff Cutler's statements to be considered evidence of retaliatory motivate is inappropriate at the summary judgment stage.

>
b.    Demotion Memorandum and Allegedly Political Statements

Next, the district court considered the language in the demotion memorandum referencing Sheriff Cutler's campaign promise not to terminate any employees.  The district court found that the mention of the campaign promise could not be viewed as a reference to Haverda's letter to the editor. Additionally, the district court did not consider the allegedly political statements, which Haverda offered as evidence.  Although the language in the

demotion memorandum and statements to "get on the train" or "join the team" do not appear to be retaliatory on their face, summary judgment evidence is not considered in a vacuum. A court must consider the evidence in the light most favorable to Haverda, which includes considering the demotion memorandum language and allegedly political statements in context with any other evidence, circumstantial or direct, that Haverda has offered. Based on the evidence Haverda presented, a court in summary judgment proceedings must infer that Sheriff Cutler was aware of Haverda's campaign activity and that he had a negative reaction to it. It follows then that the language in the demotion memorandum should be considered evidence that Sheriff Cutler was indirectly referencing his awareness of Haverda's letter to the editor and that the demotion was in retaliation for Haverda's speech. Likewise, statements about needing to "get on the train" and "join the team" can, and often do, carry a political connotation. Whether the demotion language and the allegedly political statements were meant to be retaliatory is not a question for the court to decide during a summary judgment analysis. This inquiry involves the credibility of the evidence and must be decided by the fact-finder. Considering these statements in context with the other evidence provided by Haverda, a court at the summary judgment stage must consider these statements as evidence of retaliation.

            2.     Appellees' Explanation for Demoting Haverda

Next, Haverda contends that the district court erred when it decided that summary judgment should be granted because Haverda failed to rebut Appellees' showing that Haverda would have been demoted in the absence of his allegedly protected speech. Pursuant to the *Mt. Healthy* doctrine, once Haverda shows that his protected speech was a motivating factor in his demotion, Appellees may still avoid liability by showing that they would have taken the same adverse employment action even in the absence of the protected speech.

No. 12-51008

*Mt. Healthy*, 429 U.S. at 287. However, an employee may still refute that showing by presenting evidence that his employer's explanation for the adverse employment action is merely pretextual. *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991).

Appellees, in support of their claim that they would have demoted Haverda in the absence of the letter to the editor, provided the following: (1) evidence that the Jail was in deplorable condition when Sheriff Cutler took office; (2) evidence that certain Jail procedures were inefficient or detrimental to inmates; (3) testimony of Chief Deputy Page concerning the attempted Jail escape and the lack of a response strategy; (4) testimony of Chief Deputy Page alleging that Haverda lacked motivation and leadership ability; (5) testimony of Chief Deputy Page alleging that Haverda would sit in the employee dining room for hours at a time during work hours; (6) testimony of Chief Deputy Page alleging that Haverda kept a slovenly appearance; and (7) testimony of Chief Deputy Page alleging that Haverda failed to complete a project to prepare a trailer.

Haverda presented the following evidence of pretext to suggest that Appellees would not have fired him in the absence of the protected speech: (1) the other two Jail Command Staff members, "equally responsible" for the Jail's condition by Chief Deputy Page's own admission, were not demoted or terminated; (2) none of the Jail Command Staff members, including Haverda, were terminated after the sixty-day suspended terminations; (3) testimony of Major Robinson that he would not have demoted Haverda, that he did not know why Haverda was demoted and others were not, and that he was surprised Haverda was demoted; (4) testimony of Major Robinson that he did not recall seeing Haverda sitting in the break room for hours; (5) testimony of Major Robinson that Haverda's appearance did not affect his work performance; (6) Haverda's own testimony providing an alternative and excusable explanation for

13

failing to complete the trailer project; (7) the demotion memorandum, which did not identify any specific performance issues following Haverda's suspended termination; (8) the transcript of the secretly recorded meeting, which demonstrates that during the meeting Sheriff Cutler focused on performance problems prior to Haverda's suspended termination; and (9) a documented history of positive performance reviews.

The district court characterized Haverda's rebuttal evidence as merely disagreeing with the assessment of his performance, as arguing that Appellees' evidence is merely subjective, and as arguing that reliance on the Jail condition to demote him is flawed.  The court went on to hold that Haverda's offered evidence was unavailing and that Haverda had failed to rebut Appellees' showing that they would have demoted Haverda in the absence of his protected speech.  In reaching this conclusion, the district court erred by applying a mistaken standard of review and mischaracterizing Haverda's rebuttal arguments.

This Circuit has held that summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate.  *Click v. Copeland*, 970 F.2d 106, 113–14 (5th Cir. 1992).  Courts applying the *Mt. Healthy* doctrine in summary disposition analyses have held that if a plaintiff brings forth evidence of pretext, the determination whether the employer's stated reasons are pretextual is a fact issue reserved for the jury.  *See Click*, 970 F.2d at 113–14 (finding that evidence of motivation for adverse employment action, along with plaintiff's evidence supporting a contrary inference, is "fodder for the jury"); *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 193 (5th Cir. 1988) (holding, after considering the plaintiff's evidence of pretext, that the determination whether the plaintiff's speech was the motivating factor in his discharge turns on a genuine issue of material fact).  Courts deciding the causation issue by summary disposition have generally done so only when the

employer's reasons have not been controverted. *See Pierce*, 37 F.3d at 1151 (holding that the plaintiff did not present evidence of retaliation and, therefore, the plaintiff failed to allege facts that would allow a rational jury to conclude that the employer's reasons for termination were pretextual); *see also Beattie*, 254 F.3d at 604 (finding that the plaintiff had not offered evidence to rebut the employer's evidence that it would have terminated the plaintiff in the absence of the protected speech and, therefore, summary judgment was proper).

In its analysis, the district court characterized Haverda's argument of pretext as merely disagreeing with the assessment of his performance and disagreeing about whether he deserved to be demoted. The district court cited several Fifth Circuit decisions for the proposition that simply disputing the underlying facts of an employer's decision is not sufficient to create a fact issue. However, the district court erred in its framing of Haverda's argument as merely disputing the underlying facts of Appellees' decision, and, thus, the cases cited are inapposite.[1]

---

[1] For instance, in *LeMaire v. Louisiana Department of Transportation & Development*, the court held that the plaintiff had failed to create a fact issue regarding whether the defendant's decision to terminate him was a pretext for retaliation. 480 F.3d at 391. In *LeMaire*, a plaintiff filed suit against a Louisiana state agency alleging that he was terminated as retaliation for reporting sexual harassment. *Id.* at 386. The defendant established that it had been presented with negative accounts regarding plaintiff's job performance, and it terminated the employee. *Id.* at 391. These accounts were supported by a number of uninterested witnesses, and the plaintiff merely denied the allegations of poor performance. *Id.* The court in *LeMaire* applied the *McDonnell Douglas* framework, which places the burden on the plaintiff to demonstrate that an employer's legitimate, nondiscriminatory reason is actually a pretext for retaliation. *Id.* at 388–89. The court held that the plaintiff needed to do more than simply dispute the underlying facts or argue that the defendant had made an incorrect decision to satisfy its burden. *Id. LeMaire* stands for the proposition that, under the *McDonnell Douglas* framework, a plaintiff cannot prove that an employer's proffered reason is pretextual merely by disputing the truth of the underlying facts for that reason. Such evidence, alone, merely implies that an employer may have made a mistake in deciding to take action against an employee. Because even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee, a plaintiff must offer evidence to support an inference that the employer had a retaliatory motive, not just an incorrect belief. Here, unlike in *LeMaire*, Haverda has offered such evidence, and, under the *Mt. Healthy* doctrine*,* the burden remains on Appellees to show that they would

No. 12-51008

In the instant action, Haverda refutes Appellees' evidence as to his alleged lack of motivation, lack of leadership, and failure to complete the trailer project. If Haverda were to stop there, his evidence may not be enough to create a fact issue. However, Haverda also offers the testimony of Major Robinson to support that he did not deserve to be demoted, was not sitting in the dining room for hours at a time, and his appearance did not affect his work performance. Haverda also offers a history of positive performance reviews and an alternative explanation that excuses his failure to complete the trailer project. This evidence, whether weak or strong, is enough to create a fact issue regarding whether Appellees have presented sufficient evidence that they would have demoted Haverda in the absence of the protected speech.

Appellees also argue, and present evidence, that the Jail's condition prior to Sheriff Cutler taking office was deplorable and provided sufficient grounds for termination. In support, Appellees cite Haverda's deposition testimony in which he was asked whether he felt it would have been "unreasonable for [Sheriff Cutler] to fire [Haverda] and [Major Robinson]" based on the condition of the Jail on the day that Sheriff Cutler issued suspended terminations to the Jail Command Staff members. Haverda answered, "Probably not." While both Appellees and the district court place great weight on this admission, Haverda's admission, at best, merely establishes that it may not have been unreasonable to terminate the entire Jail Command Staff on the day that the entire Staff received suspended terminations. However, that is not the relevant issue. In order to avoid liability, Appellees must establish that they would have taken the same adverse employment action even in the absence of the protected speech.

---

have demoted Haverda even in the absence of such a motive. *See Jordan v. Ector Cnty.*, 516 F.3d 290, 301 (5th Cir. 2008); *Gonzalez v. Dallas Cnty., Tex.*, 249 F.3d 406, 412 n.6 (5th Cir. 2001) (clarifying that "First Amendment retaliation claims are governed by the *Mt. Healthy* 'mixed-motives' framework, not the *McDonnell Douglas* pretext analysis.").

The issue is not whether Haverda *could* have been demoted for the condition of the Jail, but whether he *would* have been demoted if he had not engaged in protected speech. *See Mt. Healthy*, 429 U.S. at 287; *Jordan v. Ector Cnty.*, 516 F.3d 290, 301 (5th Cir. 2008). "A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct." *Id.* at 286.

Haverda has offered evidence that none of the other Jail Command Staff members equally responsible for the Jail's condition prior to Sheriff Cutler's arrival were demoted or terminated, even after the sixty-day suspended terminations. *See Jordan*, 516 F.3d at 301 ("However plausible, even compelling, the proffered justifications for firing [the plaintiff] sound in isolation, the evidence that others had engaged in conduct similar to [the plaintiff's] without being disciplined is sufficient for a reasonable jury to conclude that [the employer] would not have taken the same action in the absence of the protected conduct."). He has also offered evidence of a history of positive performance reviews, as well as the testimony of Major Robinson stating that he did not know why Haverda was demoted and others were not. Further, Haverda highlights that the demotion memorandum does not explain how his performance was weaker than that of the other Jail Command Staff members, and that Sheriff Cutler could not explain this distinction during his deposition. A reasonable jury could consider this evidence, along with Haverda's other evidence, and find that Appellees failed to show that they would have terminated Haverda in the absence of the protected speech.

### 3.     Speaking as a Citizen

Alternatively, Appellees contend that the district court's grant of summary judgment should be affirmed because Haverda was not speaking as a citizen when he wrote his letter to the editor. Pursuant to *Garcetti v. Ceballos*, for an employee's speech to be protected by the First Amendment, he must be speaking

as a citizen on a matter of public concern.  547 U.S. 410, 418 (2006).  "An employee is not speaking as a citizen—but rather in his role as an employee—when he 'makes statements pursuant to his official duties.'"  *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 421).  Activities required by one's position or undertaken in the course of performing one's jobs are activities pursuant to official duties.  *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007).  In *Nixon v. City of Houston*, a Houston police officer was terminated after the court held that media appearances and articles written by him were not protected by the First Amendment.  The court found that by speaking to the media in uniform, at the scene of an accident, while performing his job, the officer had made the speech pursuant to his official duties.  *Nixon*, 511 F.3d at 496–497, 498–499.  *Nixon*, however, is distinguishable.  In the instant case, Haverda wrote a letter to the editor, during a Sheriff's Election campaign, expressing support for the incumbent Sheriff Ratliff and criticizing his political opponent.  Haverda received no compensation to pen the letter to the editor, and the letter was public and not an internal publication.  Additionally, it was not part of Haverda's job duties to speak to the media or write letters to the editor.  Haverda was speaking as a citizen, supporting a candidate during an election, when he submitted his letter to the editor.  Letters to the editor, supporting a candidate during a campaign, are a unique form of speech that embody the very essence of the First Amendment and require its full protection.  *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 565 (1968) (holding that a teacher's First Amendment rights were violated when the Board of Education dismissed him for sending a letter to newspaper criticizing a proposed tax increase); *see also Garcetti*, 547 U.S. at 419("The Court has acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion."); *cf. Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th

Cir. 2008) (recognizing that the First Amendment forbids government officials to discharge public employees for not being supporters of the political party in power). For these reasons, we conclude that Haverda was speaking as a citizen, and his letter to the editor is protected speech under the First Amendment.

B.     Qualified Immunity Analysis

Haverda also argues that the district court erred in determining that Appellees were entitled to summary judgment on the basis of qualified immunity. Qualified immunity shields a government official from liability based on his performance of discretionary functions. *Beltran v. City of El Paso*, 367 F.3d 299, 302–03 (5th Cir. 2004) (citation omitted). To determine whether qualified immunity is appropriate, a court undertakes a two-step analysis. First, a court evaluates whether, taking the facts in the light most favorable to the plaintiff, the official's conduct violated a constitutional right. *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409–10 (5th Cir. 2009). Second, a court must determine whether that constitutional right was clearly established at the time of the conduct. *Id.* at 410. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982).

The qualified immunity defense is appropriate at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct, or (2) the court "skip[s], for the moment, over . . . still-contested matters to consider an issue that would moot their effect if proved." *Id.* at 1124. "If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability . . . , and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment." *Barker v.*

*Norman*, 651 F.2d 1107, 1123–24 (5th Cir. Unit A July 1981).    Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this "has nothing to do with the qualified immunity defense." *Id*.

At the summary judgment stage, a court must take the facts in the light most favorable to the plaintiff and, if material facts are still disputed, "skip[] . . . over" these matters in its qualified immunity analysis.  *Barker*, 651 F.2d at 1124. The district court granted summary judgment for Appellees after concluding that Haverda failed to allege an actionable violation of his First Amendment rights.    But, for the reasons discussed above, Haverda has established genuine issues of material fact regarding whether he was terminated for exercising his protected right to free speech.  The district court's belief that Appellees had established beyond dispute that they did not demote Haverda because of his speech has "nothing to do with the qualified immunity defense." *Id*.  Further, here, there is no doubt that Haverda had a clearly established constitutional right not to be fired for engaging in protected speech. *See Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008) ("Terminating an employee for engaging in protected speech . . . is an objectively unreasonable violation of such an employee's First Amendment rights.").  Therefore, the district court erred in granting summary judgment on qualified immunity grounds.  For these reasons, the Court reverses the district court's grant of qualified immunity.

## IV.    Conclusion

For the foregoing reasons, we conclude that the district court erred in granting summary judgment in Appellees' favor on both Haverda's First Amendment retaliation claim and on Appellees' qualified immunity defense. The Court intimates no opinion on the eventual merits of the litigation but is mindful of its limited role in determining whether summary judgment is proper.

No. 12-51008

We, therefore, **REVERSE** the judgment entered in favor of Appellees and **REMAND** for further proceedings consistent with this opinion. **REVERSED** and **REMANDED**.