# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2020

Lyle W. Cayce
Clerk

No. 19-10832

OMAYMA ELTALAWY, Individually and next friend of A.M. and N.M.,

> Plaintiff - Appellant

v.

LUBBOCK INDEPENDENT SCHOOL DISTRICT; NANCY PARKER, In her Individual Capacity and her Official Capacity as Principal of Ramirez Elementary School,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:18-CV-209

Before DENNIS, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:[*]

Appellant Omayma Eltalawy, individually and as next friend to A.M. and N.M., appeals the district court's order granting Appellees Lubbock Independent School District ("LISD") and Nancy Parker, in her official capacity

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10832

as the principal of Ramirez Elementary School[1] ("School"), summary judgment. We AFFIRM.

## BACKGROUND

The following facts are undisputed. A.M. and N.M. are Egyptian nationals who immigrated to the United States with Appellant—their mother—in February 2017. On February 9, 2017, A.M. and N.M. began attending the third grade at the School, which is part of LISD. On February 27, 2017, A.M. and N.M. were removed from the third grade and placed in the second grade. Appellant was not given prior notice of the decision to remove A.M. and N.M. from the third grade.

The parties dispute the circumstances around the removal. Parker states that—once A.M. and N.M. started the third grade—A.M. and N.M. underwent assessments of their academic abilities to determine whether they were appropriately placed in the third grade. Yu Kim-Johnson and Esther Caballero, A.M. and N.M.'s third grade teachers at the time of removal, respectively state that the assessments and their observations of A.M. and N.M. showed that A.M. and N.M. were not academically suited for the third grade. Specifically, Parker states that the assessments showed that A.M. and N.M. "had difficulty with third-grade level reading comprehension" and that their comprehension was "very limited." Kim-Johnson and Caballero state that, after the assessments, they met with Appellant to discuss the children's difficulties with the third-grade curriculum. Both teachers state, "As a result

---

[1] Appellees refer to the School as the "Ramirez International Baccalaureate School." But, below, their motion for summary judgment refers to the School as the "Ramirez Elementary School." Appellant and the district court refer to the School as the "Ramirez Elementary School." So, too, does the School's official website. *See* RAMIREZ ELEMENTARY SCHOOL, www.lubbockisd.org/ramierz (last visited Jan. 15, 2020). For these reasons, we refer to the school as the "Ramirez Elementary School."

of the meeting, it was decided that it would be best for both NM and AM to be placed in the second grade to finish the 2016–2017 school year."

Appellant, for her part, states that—prior to enrolling her children at the School—she was told that A.M. and N.M. would be placed in the third grade and that that decision was final. Appellant states that she never met with A.M. and N.M.'s teachers prior to the children's removal and that A.M. and N.M. "were doing fine in their subjects" at the time of removal. Appellant instead states that she met with Parker several days before A.M. and N.M. were removed and that, at this meeting, Parker stated that she was concerned that A.M. and N.M. would fail an upcoming third-grade State of Texas Assessments of Academic Readiness ("STAAR") test. Appellant states that Parker (1) informed her that A.M. and N.M. would need to repeat the third grade if they failed the STAAR test and (2) suggested removing them to the second grade. Appellant states that it was only later that she learned that failing the third-grade STAAR test would not preclude A.M. and N.M. from progressing to the fourth grade. Parker does not directly refute Appellant's statements regarding Parker's comments about the STAAR test; however, Parker states that if A.M. and N.M. took the third-grade STAAR test and failed, it would have "gone on their record" but otherwise not affected "the accountability ratings of Ramirez Elementary or LISD."

In any case, Appellant did not formally file a complaint with LISD about the removal. Instead, on May 21, 2018, Appellant sent a letter about A.M. and N.M.'s removal to LISD's Board of Trustees.[2] On June 7, 2018, Appellant met with Parker, Kim-Johnson, LISD interim associate superintendent Sam Ayres, and LISD associate superintendent Doyle Vogler. At the meeting, Appellant

---

[2] Even if this letter is construed as a complaint, Appellant does not dispute that it was untimely and did not comply with LISD policy regarding the filing of complaints.

stated that she did not want her children—who were set to start the fourth grade—accelerated to the fifth grade.[3]  Instead, she stated that she wanted an investigation opened into A.M. and N.M.'s removal from the third grade.  In response, Vogler stated that he and Ayres had already investigated the removal and determined that the removal was appropriate.

Subsequently, Appellant filed this suit, which alleged that Appellees violated Appellant's rights when A.M. and N.M. were removed from the third grade.  Specifically, Appellant brought three actions under, respectively, (1) 42 U.S.C. § 1983—through which she alleged that Appellees violated Appellant's Fourteenth Amendment rights to due process and equal protection under the law; (2) Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*; and (3) the Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. § 1701 *et seq.*

Two summary judgment motions were filed.  First, Parker—who was sued in her individual and official capacities—moved for summary judgment on Appellant's individual-capacity claims.  The district court granted this motion and entered partial final judgment on the individual-capacity claims.[4]  Second, LISD and Parker—now in her official capacity only—moved for summary judgment on the remaining claims.  The district court also granted

---

[3] At the time of the meeting, A.M. and N.M. had successfully completed the second and third grades.

[4] The judgment was entered separately from the order granting summary judgment in compliance with Federal Rule of Civil Procedure 58(a).  The judgment was also entitled "Judgment."  For these reasons, the district court's clear intent was to enter partial final judgment under Federal Rule of Civil Procedure 54(b).  *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc).  The district court's ruling as to the individual-capacity claims was therefore appealable once the partial final judgment was entered even though final judgment was not yet entered with respect to the remaining claims.  *See id.*

No. 19-10832

this motion and entered partial final judgment on the remaining claims. Appellant timely appealed from the second partial final judgment.[5]

## STANDARD OF REVIEW

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). If the moving party shows "that there is an absence of evidence to support the non-moving party's case," then the non-moving party must produce evidence showing a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).

## DISCUSSION

Appellant has not shown a genuine dispute of material fact regarding her § 1983, Title VI, or EEOA claims.[6] We address the claims in turn.

---

[5] At the time that Appellant filed her notice of appeal, she could no longer timely appeal the first partial final judgment. *See* FED. R. APP. P. 4(a)(1)(A). In any case, even if the first partial final judgment were somehow defective and only the second partial final judgment was proper and dismissed all of the claims—including the individual-capacity claims—nowhere does Appellant argue on appeal that the district court erred in dismissing the individual-capacity claims. *Cf. United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

[6] Notably, the only summary judgment evidence Appellant submitted is her unsworn declaration. Under 28 U.S.C. § 1746, a litigant may submit an unsworn declaration as evidence in support of or against summary judgment. However, the declaration must be

> in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> . . .
>
> (2) If executed within the United States . . . : "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)

5

No. 19-10832

## I. Section 1983

First, Appellant used § 1983 as a vehicle to bring two claims: that Appellees violated A.M. and N.M.'s Fourteenth Amendment rights to (1) due process and (2) equal protection under the law. We consider the claims against LISD and Parker in turn.

### A. LISD

Section 1983 "makes liable '[e]very person' who, under color of state law, violates federal constitutional rights." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018). Municipal entities—such as LISD—qualify as persons under § 1983. *Id.* For liability to attach to a municipal entity, a litigant must prove the existence of three elements: "a policymaker; an official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012); *see also Monell v. Dep't of Soc. Servs.*,

---

(Signature)".

28 U.S.C. § 1746. The closest Appellant's declaration arrives at complying with § 1746 is when she states: "This declaration is being made pursuant to 28 U.S.C. § 1746. I am over twenty-one years of age, competent and qualified to make this declaration, personally acquainted with the facts set forth herein and such facts are true and correct." But nowhere does Appellant state that the facts are true "under penalty of perjury." As such, Appellant has submitted no competent summary judgment evidence. Nonetheless, we do not interpret this as fatal to her appeal. No party argued that Appellant's evidence is incompetent on appeal or at the district court. Nor did the district court discuss the competence of the evidence sua sponte. *See Capital Concepts Props. 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 176 (5th Cir. 1994) ([B]ecause CapCon has failed to challenge on appeal the court's conclusion that CapCon did not offer competent summary judgment evidence of Old Sunbelt's fraud, . . . the district court's judgment would still stand."); *see also Anderson v. Hillsborough Cty. Sch. Bd.*, 390 F. App'x 902, 904 (11th Cir. 2010) (unpublished) ("[M]ost importantly, Anderson's response to the Board's motion for summary judgment did not challenge the admissibility of any of the evidence submitted in support of the Board's motion for summary judgment. We have long held that we do not consider an issue that was not raised in district court but raised for the first time [on] appeal.") (citation omitted); *Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 705 (6th Cir. 2000) ("Although there is some question as to the admissibility of portions of the affidavits that Tinsley has submitted, the admissibility question has not been raised by Calloway.").

436 U.S. 658, 694 (1978) (holding that an official policy or custom of the governmental-entity defendant must have caused the alleged constitutional deprivation for municipal liability to attach).

Regarding official policies, when "the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it . . . represents an act of official government 'policy' as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (footnote omitted). The court must "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "[W]hether a particular official has 'final policymaking authority' is a question of *state law*." *Id.* (quoting *Pembaur*, 475 U.S. at 483) (emphasis in original).

Appellant argues that Parker had final policymaking authority for LISD and that A.M. and N.M.'s removal from the third grade was an exercise of that authority. But under Texas law, LISD's board of trustees possesses final policymaking authority over policies applicable to the School. *See* TEX. EDUC. CODE ANN. § 11.151(b); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Thus, Parker could not create policies for LISD. And LISD is not liable for Parker's independent actions. *See Monell*, 436 U.S. at 691 (stating that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); *cf. Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."). Nor does Appellant identify any LISD policy or custom in association with her § 1983 claims let alone argue that an LISD policy or

No. 19-10832

custom was the "moving force" behind the alleged constitutional violations. For these reasons, Appellant's § 1983 claims against LISD are unavailing.

## B. Parker

Appellant's official-capacity claims against Parker are unavailing for the same reasons her claims against LISD are unavailing. "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Id.* For comparison, personal-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law" and, in such suits, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*

Here, Parker is an employee, representative or official of LISD; thus, the claims against Parker in her official capacity are redundant of the claims against LISD. *See Hafer*, 502 U.S. at 25; *Weathers v. Sch. Bd. of Lafayette Par.*, 281 Fed. App'x 428, 428–29 (5th Cir. 2008) (unpublished) (treating claims against principal sued in his official capacity the same as claims against school board); *Roman v. Whitmire*, 62 F.3d 396, 1995 WL 449639, at *1, n.3 (5th Cir. 1995) (unpublished) ("Claims brought against [principal] and [teacher] in their official capacities are properly treated as claims against [the school district].") (citing *Hafer*, 502 U.S. at 25–26). Accordingly, Appellant's § 1983 claims against Parker are unavailing.

## II. Title VI

Second, Appellant brought a Title VI claim, arguing that Appellees discriminated against A.M. and N.M. on the basis of their national origin (Egypt) by (1) removing them from the third grade and (2) preventing them

No. 19-10832

from taking the third-grade STAAR test.  Appellant has not shown a genuine dispute of material fact regarding her Title VI claim.

"[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).  Section 601 of Title VI states, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Section 601 "prohibits only intentional discrimination." *Alexander*, 532 U.S. at 280.

Here, Appellant has neither shown that LISD receives federal financial assistance nor proffered any evidence that LISD was involved in A.M. and N.M.'s removal from the third grade, much less that it intentionally discriminated against them.  Accordingly, Appellant's Title VI claim against Appellees is unavailing.

### III. EEOA

Third, Appellant brought a claim under the EEOA, arguing that Appellees made no effort to overcome language barriers "which might exist" for A.M. and N.M.[7] and, instead, removed A.M. and N.M. from the third grade and denied them the opportunity to take the third-grade STAAR test.  It is not clear what relief, if any, would be available to Appellant if an EEOA violation were shown.  Regardless, Appellant has effectively forfeited her EEOA claim.

Under the EEOA, "[a]n individual denied an equal educational opportunity . . . may institute a civil action in an appropriate [federal] district court . . . against such parties, and for such relief, as may be appropriate."  20

---

[7] This argument is in tension with Appellant's statement that A.M. and N.M. were "doing fine in their classes" at the time they were removed from the third grade.

U.S.C. § 1706. The relevant portion of the EEOA states, "No state shall deny equal opportunity to an individual on account of his or her race, color, sex, or national origin, by—[among other things—]the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." *Id.* § 1703. A local school district is an "educational agency" under § 1703. *See United States v. Texas*, 601 F.3d 354, 364–65 (5th Cir. 2010). "In formulating a remedy for a denial of equal educational opportunity[,] . . . a court . . . shall seek or impose only such remedies as are essential to correct particular denials of equal educational opportunity[.]" 20 U.S.C. § 1712.

Here, Appellant's operative complaint generally seeks, for each of her claims, "damages, as well as . . . interest on all damages and equitable and other relief that the court deems appropriate for which claim is hereby made." The complaint also seeks "liquidated/exemplary damages" and "attorneys['] fees and costs[.]"[8] As explained by the Eighth Circuit in *Mumid v. Abraham Lincoln High School*, monetary damages are unavailable under the EEOA. 618 F.3d 789, 797–99 (8th Cir. 2010). And Appellant does not affirmatively seek compensatory education generally,[9] specific relief that could be classified as

---

[8] The complaint summarizes the relief requested: "actual and liquidated/punitive damages, equitable relief, prejudgment and post-judgment interest . . . , attorneys['] fees, costs . . . and such other and further relief to which [Appellant] may be justly entitled[.]" Notably, in this summary, Appellant specifically requests equitable relief. In her previously-quoted statement, however, she requests "equitable and other relief that the court deems appropriate[.]" In other words, in her previously-quoted statement, Appellant leaves it to the court's discretion to award equitable relief. But in her summary of requested relief, Appellant affirmatively seeks equitable relief. Nowhere does the complaint explain what specific equitable relief is sought, if any.

[9] Compensatory education is an equitable remedy commonly sought in cases involving alleged violations of the Individuals with Disabilities Education Act (IDEA). *See, e.g., G ex rel. RG v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 308–09 (4th Cir. 2003) (collecting cases). It provides "services prospectively to compensate for a past deficient program." *Spring Branch Indep. Sch. Dist. v. O.W.*, 938 F.3d 695, 712 (5th Cir. 2019) (quoting *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008)). Compensatory education "should

compensatory education, or other specific types of equitable relief.[10] Nonetheless, the district court could craft an equitable remedy if an EEOA violation is shown.[11]  *See* § 1712; *Swann v. Charlotte–Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").  But Appellant has effectively forfeited her EEOA claim.

---

place children in the position they would have been in but for the violation[.]"  *Id.*  In the IDEA context, compensatory education can include "reimbursement for the cost of private special-education services," *id.* (citation and internal quotation marks omitted), and "tutoring, after-school classes, or academic summer camps" where a school failed to provide a sufficient educational program.  Kevin Golembiewski, *Compensatory Education Is Available to English Language Learners Under the EEOA*, 9 ALA. C.R. & C.L.L. REV. 57, 62 (2018).  In this way, compensatory education is tailored to an individual child's needs and does not require a school district to reform its general programming.  Here, Appellant's operative complaint does not affirmatively seek compensatory education or otherwise request relief that could be categorized as compensatory education.  Further, the parties do not cite any case—and we are unaware of one—that has decided whether the EEOA permits awards of compensatory education.  *Id.* at 78 ("No court has ruled on whether the EEOA permits awards of compensatory education[.]"); *cf. Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 126 n.2 (3d Cir. 2017) (recognizing that compensatory education "*might* in other circumstances sustain a live claim" but holding that the claim for relief was moot) (emphasis added).  Nor do the parties otherwise brief the issue, further indicating that Appellant never intended to seek compensatory education in her catchall request for "equitable relief."

[10] In the typical EEOA case, several plaintiffs seek injunctive relief in the form of district-wide reforms.  *See*, *e.g.*, *Castaneda v. Pickard*, 648 F.2d 989 (5th Cir. Unit A 1981).  Appellant does not seek this type of relief.

[11] In response to Appellees' motion for summary judgment below, Appellant clarified her EEOA theory, stating that she is not "generally challeng[ing] the entirety of [Appellees' English as a Second Language] program" but instead "argu[ing] that [Appellees] specifically denied educational opportunities to AM and NM individually by failing to make efforts to overcome their particular language barriers before demoting them an entire grade level and by refusing to give them a chance to take the third grade STAAR test[.]"  Appellant argues the same on appeal.  In other words, it seems the only relief possibly available to Appellant is compensatory education—an as-of-yet untested theory of relief in EEOA jurisprudence.  But it is not clear that Appellant would even want this type of relief, which would possibly require something akin to this: after-school tutoring, summer classes, or other extra studying so that A.M. and N.M. could take and pass an exam to receive credit to advance to the grade above them, thereby correcting any denial of equal educational opportunity.  It is undisputed that Appellant did not want her children accelerated to a higher grade at the time that she met with LISD officials about A.M. and N.M.'s removal.

"To find a violation of, and order a remedy under, the EEOA, [Appellant] must establish (1) a violation of a student's rights under the EEOA, (2) that the violation stemmed from a failure to take appropriate action on the part of the defendants, and (3) that any remedial order is essential to correct the particular denials of EEOA rights found." *Texas*, 601 F.3d at 365 (internal quotation marks, citations, and brackets omitted). "To determine the appropriateness of an educational agency's action" in particular,

> this court has instituted a three-prong test: (1) whether the program is based on sound educational theory, (2) whether reasonable efforts are being made to implement the theory (implementation prong), and (3) whether the program, over a legitimate period of time, has achieved some success in overcoming language barriers (results prong).

*Id.* at 366.

Here, Appellant represented to the district court that she does not take issue with Appellees' English as a Second Language program. Nor does Appellant argue differently on appeal. *Cf. United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived."). Instead, on appeal, Appellant essentially argues that—once A.M. and N.M. started the third grade—Appellees failed to take appropriate action to overcome any language barriers so that A.M. and N.M. could remain in the third grade. What Appellant implies is that once A.M. and N.M. were placed in the third grade, they were entitled to remain in it. But as new out-of-country transfer students, A.M. and N.M. had to be appropriately placed in a grade in accordance with 19 Texas Administrative Code § 74.26, which states:

> A school district must ensure that the records or transcripts of an out-of-state or out-of-country transfer student (including foreign exchange students) or a transfer student from a Texas nonpublic school are evaluated and that the student is placed in appropriate classes promptly. The district may use a variety of methods to

verify the content of courses for which a transfer student has earned credit.

§ 74.26(a)(2).  Appellant neither cites this statute nor argues in relation to her EEOA claim that Appellees in any way violated the statute.  *Cf. Thibodeaux*, 211 F.3d at 912.  To show that Appellees failed to take appropriate action to overcome any language barriers so that A.M. and N.M. could remain in the third grade, Appellant must show that the third grade was the appropriate placement for A.M. and N.M. in the first place or, in other words, that Appellees violated § 74.26(a)(2).[12]  But because Appellant does not engage § 74.26(a)(2), she has effectively forfeited her EEOA claim.

## CONCLUSION

Each of Appellant's claims is unavailing.  We AFFIRM.

---

[12] Appellant's argument that Appellees did not allow A.M. and N.M. to take the third-grade STAAR test when they were removed from the third grade also hinges on whether a third-grade placement was appropriate in the first place.