# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 6, 2010

No. 09-20470

Lyle W. Cayce
Clerk

JOHN P. WILLIAMS

Plaintiff - Appellant

v.

CERTAIN INDIVIDUAL EMPLOYEES OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE - INSTITUTIONAL DIVISION AT THE JESTER III UNIT, RICHMOND, TEXAS; JANE DOE, State Employee, Jester 3; JOHN OR JANE DOE, Texas Department of Criminal Justice/University of Texas Medical Branch Employee Jester 3; JEDVANNI ORTIZ, CO III Texas Department of Criminal Justice Employee Jester 3; KEITH BAKER, CO V Texas Department of Criminal Justice Employee Jester 3

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-259

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff John W. Williams ("Williams"), a Texas state prisoner, appeals from the district court's grant of summary judgment to the defendant employees of the Texas Department of Criminal Justice, who he claims were  deliberately

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20470

indifferent to his serious medical needs following a leg amputation procedure, in violation of the Eighth Amendment and 42 U.S.C. § 1983. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

At all relevant times, Williams was an inmate of the Texas Department of Criminal Justice. He suffers from multiple chronic diseases, including diabetes and hypertension. On May 15, 2006, Williams underwent a below-the-knee (BKA) amputation of his left leg at the University of Texas Medical Branch Hospital (he had, on a prior occasion, also had his right leg amputed). The operation went smoothly, and the hospital administered Tylenol #3 to Williams for pain. On May 19, 2006, Williams was "weaned off" his original painkillers in favor of oral pain medication and discharged from the hospital. The hospital discharge notes called for "discharge to [the] infirmary," continued medications including Tylenol #3 and aspirin, as well as physical rehabilitation.

Williams alleges in his verified complaint that, upon returning to the Jester III Unit, he was placed in administrative segregation rather than the infirmary, and that the defendants denied him access to any medical care. He spoke to defendant Jedvanni Ortiz, a correctional officer who in turn spoke with Unknown Defendant #2, a prison duty nurse. Ortiz told Defendant #2 that Williams was in pain and that he was supposed to be admitted to the infirmary. After speaking with Defendant #2, Ortiz told Williams that "[t]here was no order" for the infirmary, and that "[t]hese people don't give a f___ about you or your leg." Williams alleges that, as a result of his or her conversation with Ortiz, Defendant #2 knew of his pain yet refused to provide any medical treatment for it. Williams further alleges that Defendant #2 had actual or constructive notice of his hospital orders to be placed in the infirmary, but that Defendant #2 "denied convalescent care." He claims that, as a result, he "suffered severe pain,

2

No. 09-20470

. . . was denied convalescence, suffered trauma and mental anguish by [being left] to his own devices dealing with his pain and suffering."

Williams alleges that on May 19th he also spoke with Unknown Defendant #1, a prison employee working the infirmary admissions desk, who "refused Williams access to the duty nurse after Williams complained of severe pain, that his leg was cut off just four days ago."

Later that same evening, May 19th, Williams alleges he also spoke with defendant Keith Baker, a correctional officer who "worked security" in the administrative segregation unit where Williams was housed. Williams alleges that he told Baker about his amputation, his lack of medication, his need to move to the infirmary, and his pain, but that Baker did nothing in response and, specifically, that he did not notify the infirmary or medical personnel of his pain. According to Williams' affidavit, "Williams also told Baker that Williams was near the point of passing out because of the pain. Baker replied: 'Don't pass out here, 'cause nobody's going to come get you. We're on lockdown. Nobody goes anywhere during lockdown.'"

Williams subsequently filed the instant suit. Ortiz and Baker answered; the other defendants were never identified and therefore were never served with the complaint.[1] Baker and Ortiz presented a motion for summary judgment on the merits of Williams' claims. In support of the motion, they offered portions of Williams' medical records; portions of his "medication compliance records"; and the affidavit of Laura Burgess, the supervisor of the Jester III Unit classification department.

---

[1] After Williams filed a more definite statement (as requested *sua sponte* by the district court), the district court ordered the Texas Attorney General to file an answer on behalf of all defendants, both named and unnamed. Specifically, the district court noted that Williams had "provided sufficient information to enable the Texas Attorney General's Office in identifying others who are implicated in the pleadings." There is no indication in the record that the Texas Attorney General attempted to identify those individuals; the Attorney General instead filed answers only on behalf of the named defendants.

No. 09-20470

*The medical records* include: (1) hospital notes relating to Williams' BKA and his discharge notes with instructions for continued pain medication (noting Tylenol #3 among his medications), that he was being discharged to the prison infirmary, and calling for physical rehabilitation; (2) a University of Texas Medical Branch pre-discharge "nurse's chain review" note, showing that 15 capsules of Gabapentin 100mg (aka Neurotin) and 5 tablets of Candesartan 16mg were either administered or dispensed to Williams on May 19, 2006; (3) an inpatient progress note from the prison dated May 23, 2006, indicating that Williams was complaining that he had been in administrative segregation since he came back from the hospital on Friday, May 19, 2006, and that he was complaining that he had not received any pain medications until the morning of May 23rd. The note further states that Williams' wound was tender, and that Williams received Tylenol #3 at 12:30 and again at 17:00 on May 23rd, and Darvocet at 07:15 on May 24th.

*The medication compliance records* show that Williams received Tylenol #3 twice on May 20th (at 11:50 and 17:56), and again on May 21st (at 08:03 and 11:35), as well as numerous other medications on those days (such as aspirin, insulin, Gabapentin, Candesartan, hydroclorothiazide, and diltiazem). There is no indication in these medication compliance records that the prison or the defendants dispensed or administered any medications to Williams from the time he arrived back at the Jester III Unit following discharge from the hospital on May 19th until 11:50 on May 20th.

*The affidavit of Laura Burgess* states, in relevant part:

> Plaintiff Williams arrived at the Jester III at 8:30 p.m. on Friday May 19, 2006. Because he arrived after the operational staff had left for the weekend Williams was placed in a transient cell pending a hearing with the classification committee to determine his appropriate placement. The classification committee determines all housing for inmates and meets Monday through Friday. . . .

4

No. 09-20470

In transient housing inmates are single celled. However, correctional staff monitor each inmate and medical staff makes regular rounds. Inmates are given their medications and if a medical provider felt that Williams' condition needed extra care they could transfer him to the infirmary. Because Defendants [Ortiz and Baker] are correctional officers of TDCJ, they do not have th[e] authority to provide medical care to inmates. They can only act within the scope of their authority which is the daily custodial care of inmates.

Williams submitted a sworn response to the motion for summary judgment. He first noted that the defendants had so far failed to respond to his discovery requests and requested a continuance of the court's decision on the motion for summary judgment so he could conduct discovery. He disputed the accuracy of Burgess's affidavit, insofar as the affidavit alleged that medical personnel routinely monitor inmates in the transient/administrative segregation housing. Williams averred, "There are generally 'no' nursing visits in Ad Seg. as nurses are busy with normal inmate traffic to infirmary," and Williams stated that non-medical prison employees had assisted inmates in transferring to the infirmary on prior occasions. He further disputed the accuracy of the medication charts, alleging that he received no medication until May 23rd. He also noted that the medication charts show the prison officials administered or dispensed insulin to him at 06:01 on May 18, 2006—when he was still in the hospital following his BKA. ROA at 226. In any event, Williams observed, "there is still nothing for the 19th. The first alleged nurse visit to Ad Seg was on the 20th at 11:50 am: nearly 20 hours after Williams was discharged from [the] hospital without any pain medication and nearly 18 hours after Williams arrived [at] Jester 3."

No. 09-20470

The district court granted the motion for summary judgment.[2] The district court concluded that although Williams was in pain, "the medical records refute Williams' allegation that he was denied medication for his pain or that he had been denied medical attention."   As to Williams' argument that he was unconstitutionally denied medication and treatment on May 19th, even if he was treated on May 20th, the district court concluded that this "argument does not indicate that he was denied medical attention; he only objects to the level of treatment he received and its timing.  Such allegations do not support a claim of deliberate indifference, particularly where there is no evidence showing that Williams was physically harmed by the defendants' action." Finally, the district court held that Ortiz and Baker could not be liable under § 1983 for failing to assist Williams in receiving medical attention because "the named defendants are correctional officers who are not authorized to provide medical care and are limited to custodial duties."   The district court did not expressly address Williams' request for a continuance and discovery. The district court entered judgment dismissing the entire action with prejudice.

The district court denied Williams' motion for reconsideration and Williams timely appealed.

## II. STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment de novo, applying the same standard as the district court. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

---

[2] Williams' complaint briefly alleged that he was placed in a cell that was not equipped for a disabled inmate, in violation of the Americans with Disabilities Act.  The district court did not address this issue in ruling on the motion for summary judgment, and Williams summarily notes this failure in his brief.  However, Williams has offered no substantive legal argument on any claim under the ADA, either below or on appeal, and we therefore deem the issue waived. *See Hughes v. Johnson*, 191 F.3d 607, 613 (5th Cir. 1999).

No. 09-20470

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Williams claims that the defendants refused to provide medical care in violation of the Eighth and Fourteenth Amendments. "[D]eliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, "[t]o establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health and safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer,* 511 U.S. at 837).

In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Additionally, the decision whether to provide additional treatment "is a classic medical judgment." *Estelle*, 429 U.S. at 107. A prisoner alleging a § 1983 claim involving medical treatment must show that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*

## A.    Defendants Ortiz and Baker

Williams does not argue on appeal that Oritz and Baker were authorized to administer medications or to assign him to the infirmary.  He argues instead that they were deliberately indifferent by failing to facilitate medical care.  "A prison guard is deliberately indifferent if he intentionally denies or delays access to medical care." *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992).  According to Williams' own allegations, Ortiz relayed Williams' complaints of pain and his request for infirmary convalescence to medical personnel (specifically, the prison duty nurse).  In so doing, Ortiz did not wantonly disregard or ignore Williams' serious medical needs, nor did he intentionally deny or delay his access to medical care.  Indeed, Ortiz attempted to facilitate treatment.  That Ortiz's efforts were unsuccessful does not mean that he was deliberately indifferent. *See Gobert*, 463 F.3d at 346; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).   Similarly, with respect to the claims against Baker, Williams' own factual allegations establish that his complaints of pain and need to be transferred to the infirmary were relayed to the duty nurse on May 19th—the same day he alleges that Baker intentionally denied or delayed his access to medical treatment.  Because his complaints were in fact relayed to a medical professional, under Williams' own version of the facts, Williams has not shown that Baker impeded or denied medical treatment.

## B.    Defendant #1 and Defendant #2

The district court did not err insofar as it granted summary judgment on Williams' claims against Defendant #1, the employee who worked the infirmary admissions desk.  Williams has not alleged or offered other evidence that Defendant #1 was competent to give medical care or even to unilaterally admit inmates to the infirmary; he states only that Defendant #1 "worked the infirmary admissions desk at Jester III."  Thus, we necessarily treat Defendant #1, based on the record before the court, as a non-medical prison employee for

purposes of the deliberate indifference analysis. Second, Williams alleges that Defendant #1 was deliberately indifferent to his medical needs because he or she "refused Williams access to the duty nurse" and "refused Williams admission to the infirmary." However, like defendant Baker, Defendant #1 cannot be liable for impeding or denying Williams access to medical care because the prison duty nurse, Defendant #2, was in fact notified of Williams' complaints and circumstances on the same day Williams spoke to Defendant #1: May 19th. Thus, even under Williams' version of the facts, it does not appear that further discovery would aid his claims against Defendant #1 and the district court did not err in granting summary judgment on those claims.

However, we conclude the district court erred in dismissing Williams' claims against Defendant #2, the prison duty nurse. "The mere delay of medical care can . . . constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (alterations in original) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). In this case, Williams' sworn allegations that there was a delay of almost 16 hours in receiving pain medications are uncontroverted. His medical records contain infirmary progress notes beginning only on May 23rd, and the medication compliance records show that he was given Tylenol #3 beginning only on May 20th. Furthermore, severe pain caused by the refusal to immediately treat pain can support a claim of deliberate indifference grounded in delayed treatment. *See Harris v. Hegeman*, 198 F.3d 153, 159-60 (5th Cir. 1999); *see also, e.g., Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("We have held that the substantial harm requirement may be satisfied by . . . considerable pain.").

Furthermore, the district court erred by treating Williams' claims as alleging that Defendant #2 interfered with or otherwise failed to follow an existing medical treatment plan. In *Easter*, the plaintiff suffered from chest

pain, for which a physician had prescribed heart medication (nitroglycerin). When the plaintiff complained of chest pain to the prison nurse, she directed the plaintiff to the prison pharmacy, which was closed. When the plaintiff told the nurse that the pharmacy was closed, "she sent [the plaintiff] back to his cell without providing him any treatment." *Easter*, 467 F.3d at 463-64. We concluded that the plaintiff had established the nurse's deliberate indifference because she "failed to follow a prescribed course of treatment." *Id.; See also Estelle*, 429 U.S. at 104-05 (noting that deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). Similarly, in this case, Williams has offered competent proof that Defendant #2 knew that he was to receive pain medication and infirmary care, yet failed to follow that course of treatment.

Under these alleged facts, Defendant #2 would not be entitled to qualified immunity. "[G]overnment officials acting within their discretionary authority are immune from civil damages if their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Hernandez v. Tex. Dep't of Protective and Reg. Servs.*, 380 F.3d 872, 889 (5th Cir. 2004). The relevant question is whether the defendant's conduct was objectively reasonable in light of clearly established law at the time of the incident. *Id.* "At the time [Defendant #2] denied [Williams] treatment, the law was clearly established that a prison inmate could demonstrate an Eighth Amendment violation by showing that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter*, 467 F.3d at 464 (quoting *Domino*, 239 F.3d at 756). Defendant #2's conduct was also objectively unreasonable:  A reasonable officer in

Defendant #2's position would know that denying a post-operative BKA inmate pain medication would result in substantial pain, and that his or her conduct would violate the inmate's clearly established constitutional rights. *See id.*

Additionally, because the plaintiff has sufficiently shown that Defendant #2 violated his constitutional rights and would not be entitled to qualified immunity, the district court abused its discretion by granting summary judgment without adequate discovery, even if only to learn the defendant's identity—particularly when Williams specifically requested a continuance for additional discovery. *See Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005) ("A trial court cannot rule on a summary judgment motion where adequate discovery has been denied a party."); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 167 (5th Cir. 1992) (explaining that a district court may rule on a motion for summary judgment before the completion of discovery but only "[i]f the additional discovery will not likely generate evidence germane to the summary judgment motion"); *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (requiring district court to order discovery in a prisoner suit where it may lead to the identification of unidentified defendants); *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980) (reversing grant of summary judgment to defendants where district court did not allow prisoner adequate opportunity for discovery).[3]

---

[3] Williams moved below for appointment of counsel, which the district court denied early in the litigation because "the allegations and issues in the complaint have not proven to be beyond Williams' capabilities at this stage of the proceedings." The district court also noted that it may reconsider the decision later in the proceedings. Williams contends the district court erred in denying appointment of counsel. Counsel is only warranted in exceptional circumstances, considering: (1) the type and complexity of the case; (2) the indigent's capability to present his case adequately; (3) the indigent's capability to investigate his case adequately; and (4) the type of evidence that will be presented by the parties. *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). Williams has proven to be a capable *pro se* litigant, and this is not an especially complicated case—either factually or legally. Accordingly, the district court did not err in denying his request for counsel. The district court may, of course, appoint counsel if it concludes that such a appointment is warranted on remand.

No. 09-20470

## IV.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment as to Defendant #2, AFFIRM the district court's judgment in all other respects, and REMAND for further proceedings.