# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10139

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2014

Lyle W. Cayce
Clerk

SHAWN A. STEWART,

Plaintiff-Appellant,

v.

JOAQUIN GUZMAN, Lieutenant; PATRICK MARTIN, Sergeant of Security;
CORY G. CLINKENBEARD, Security Officer; JASON COMBS, Security
Officer; LEE WILSON, Security Officer; MOLLY S. CEDILLO, Security
Officer; JOHNNY G. BROWN, Security Officer; A. WESTER; BRANDON M.
SARKISIAN,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:11-cv-00036-BL

Before STEWART, Chief Judge, and GARZA and SOUTHWICK, Circuit
Judges.

PER CURIAM:[*]

Plaintiff-Appellant Shawn A. Stewart appeals the district court's grant
of summary judgment in favor of Defendants-Appellees ("Appellees") based on
their defense of qualified immunity. Stewart filed suit in the district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that Appellees were deliberately indifferent to his safety and health. We REVERSE and REMAND for further proceedings.

## I.     FACTUAL & PROCEDURAL HISTORY

### A. Facts

Stewart is incarcerated at French M. Robertson Unit in Abilene, Texas. This appeal centers on five days during Stewart's imprisonment—July 8, 2009; September 8, 2009; October 22, 2009; November 23, 2009; and January 4, 2010. On each of the above-listed dates, Stewart suffered an asthma attack, which he contends was either caused or exacerbated by Appellees. The parties provide vastly divergent accounts of what transpired each day.

### 1.  *July 8, 2009*

Stewart alleges that Officers Joaquin Guzman, Patrick Martin, Cory G. Clinkenbeard, and Jason M. Combs observed him have an asthma attack in the 4-Building, which is where Stewart was housed. However, rather than transport him to the prison infirmary for assistance, Stewart contends that they watched him lying on the floor. Stewart argues that, because of this delay, he was forced to suffer "wanton and unnecessary pain" longer than he would have had Appellees simply made an Incident Command System ("ICS") emergency call. Stewart further asserts that the officers were aware that Stewart had recently been hospitalized due to a previous asthma attack.

Another inmate, Harvey Leroy Sossamon, III, corroborated Stewart's version of the incident. Sossamon informed Combs and Clinkenbeard that Stewart had been hospitalized recently due to an asthma attack and asked whether he could transport Stewart to the infirmary for treatment. Not only did Combs and Clinkenbeard fail to respond to Sossamon's warning concerning Stewart's medical condition, but they also refused to permit Sossamon to transport Stewart to the infirmary. Guzman and Martin then entered the

building and observed the situation but failed to assist Stewart. At this point, Stewart contends that he was lying on the flooring gasping for air. In fact, Stewart alleges that Martin asked him if something was wrong.[1] Officer Charles Wright then entered the building. Upon Wright's arrival, Sossamon informed Wright of Stewart's past hospitalization and requested that he secure medical treatment for Stewart. Subsequently, Wright made a phone call, left, and returned with a wheelchair. Wright was accompanied by Sergeants Susan Sabin and Allen Merchant. Wright, Sabin, and Merchant transported Stewart to the infirmary. Stewart remained in the infirmary for two days. Several weeks later, Stewart filed a formal complaint concerning Guzman, Martin, Clinkenbeard, and Combs's response to his request for medical treatment.

Combs responds that he contacted the prison medical staff as soon as he was informed that Stewart needed medical attention and was told to send Stewart to the infirmary. Because the 4-Building was on lockdown, Combs alleges that Stewart had to be escorted to the infirmary. However, Combs was unable to escort Stewart because he was assigned as the security desk officer and prison policy mandated that he remain at the desk. Accordingly, Combs states that he called Sabin to request an escort for Stewart. Sabin was otherwise occupied and, so, could not immediately transport Stewart. While Combs waited for Sabin, Wright arrived, and Combs asked him to escort Stewart. At this point, Stewart was unable to walk and Wright had to get a wheelchair to transport Stewart. Due to the length of time that passed before Wright returned with a wheelchair, Combs called the infirmary again to request a wheelchair. Combs contends that although several officers offered to assist him, he did not accept their offers because he was told that a wheelchair was forthcoming. Combs proceeded to initiate an ICS for

---

[1] Sossamon also stated that Martin laughed at Stewart's predicament.

emergency assistance. Stewart was then escorted to the infirmary by Sabin, Merchant, and Wright. According to Combs, Sossamon's offer to transport Stewart was refused for safety concerns and also because another officer was bringing a wheelchair.

Clinkinbeard and Guzman's accounts of the incident also differ from Stewart's. Clinkinbeard contends that Stewart was sitting on the floor when he arrived at the 4-Building. Moreover, Clinkinbeard states that he would have escorted Stewart to the infirmary but was unable to due to Stewart's inability to walk. Clinkinbeard also maintains that he was told that someone was coming with a wheelchair. Guzman simply asserted that he did not know of Stewart's asthma attack and Stewart failed to alert him to his medical condition. Similarly, Martin states that he was unaware of Stewart's medical emergency. Indeed, Martin contends that he never saw Stewart.[2] Rather, Martin stated that he was performing cell shakedowns in the D-Wing and E-Wing whereas Stewart was assigned to the F-Wing.

### 2. September 8, 2009

In addition, Stewart alleges that Officer Lee Wilson prevented him from going to the infirmary to receive an oxygen treatment, which would have forestalled another asthma attack. Stewart contends that not only did he press the call button and bang on a window to get Wilson's attention but other inmates also began knocking on windows to help Stewart. Instead of assisting Stewart, Stewart claims that Wilson "flip[ped] the bird at" him. According to Stewart, approximately ten minutes passed before Wilson allowed him to leave. Because of this delay, Stewart contends that he suffered an asthma attack and was transferred to Hendricks Hospital. Stewart again filed a

---

[2] In an email concerning Stewart's complaint, Martin stated that Stewart reported that Wright did not do anything.

complaint regarding this incident. Other inmates—Christopher Flores, Michael Ralston, and Anthony Ramsey—corroborated Stewart's account. They also stated that, as time progressed, it became apparent that Stewart was having difficulty breathing.

Wilson, however, claims that "he did not flip [] Stewart off and ignore him." Wilson contends that he did not hear any banging on the window. At the time in question, Wilson claims that he was observing another officer pass out mail in another section of the 4-Building to ensure that the officer's safety was not jeopardized. Wilson states that he heard a call signal from Stewart's section but only observed a black inmate who did not seem to be suffering from any medical condition.[3] Thus, Wilson returned to observe the officer passing out mail, reasoning that the officer's safety was a higher priority than the unidentified inmate.[4] Wilson stated that he later heard banging, saw that Stewart was in need of assistance, and opened the door for Stewart. While Wilson admits that he erred, he contends that he was merely negligent.[5] Officer Johnny Snyder reported that he observed Stewart collapse and then initiated an ICS.

### 3. October 22, 2009

Similarly, Stewart alleged that Officer Molly S. Cedillo refused to permit him to go to the infirmary for an oxygen treatment. Stewart contends that, consequently, an ICS was implemented and he had to receive emergency medical treatment. Yet again, Stewart filed a grievance.

In his grievance complaint, Stewart stated that he attempted to get Cedillo's attention by knocking on the glass walls. Stewart then proceeded to

---

[3] Throughout the investigation process, Wilson has given conflicting evidence with regards to whether he heard the call signal.

[4] Wilson contends that he would have immediately assisted Stewart had he recognized him.

[5] Wilson is no longer employed by the Texas Department of Criminal Justice.

No. 13-10139

press the emergency call button because he was beginning to suffer from an asthma attack; however, he contends Cedillo responded that he should stop pushing the emergency button. He alleges that he then began to suffer from an asthma attack. Stewart claims that Cedillo still failed to assist him. Other inmates attested that Cedillo ignored Stewart's attempts to request her assistance. These inmates also noted that it was apparent that Stewart was having an asthma attack. Several of Stewart's fellow inmates therefore began to knock on their doors in an attempt to get Stewart help. Corey D. Woodberry, another inmate, stated that he used the intercom to inform Cedillo of Stewart's need to go to the infirmary. She allegedly responded that Stewart should not have pressed the call button and could wait until she finished removing the inmates in another section. Officer Tschope became aware of Stewart's medical condition and an ICS was initiated.[6] Stewart was then transported to the infirmary for emergency treatment. Woodberry contends that Stewart was passed out when Stewart was finally permitted to go to the infirmary.

In the investigation into Stewart's grievance, Appellees provided an account of a video tape capturing the incident. According to Appellees, Stewart does not appear distressed and did not attempt to get Officer Tschope's attention, although he could have based on the proximity between the two. Tschope reported that, while he was in the F-wing, Stewart never requested his help. Rather, it was not until he was in another section that Tschope heard knocking and so walked over to Stewart's section to investigate. It was at this time that Stewart showed him his medical pass and Tschope had Cedillo open the door for Stewart.

---

[6] Woodberry also claimed that, at first, Tschope instructed Cedillo to permit Stewart to leave, but she refused to do so.

Cedillo also refutes Stewart's account of the incident. According to Cedillo, she did not ignore Stewart's requests for assistance. She maintains that Stewart never requested her assistance and did not appear to be in medical distress. Rather, another prisoner notified her that Stewart was suffering from an asthma attack. Cedillo does acknowledge that she was aware that Stewart was prone to have asthma attacks.

### 4. November 23, 2009

Stewart also alleged in his complaint that Officer Johnny G. Brown barred Stewart from going to the infirmary for an oxygen treatment. Because of this delay, Stewart was again hospitalized. Like the previous instances, Stewart filed a written complaint, arguing that Brown knew that the failure to permit him to get the treatment would result in an asthma attack. Stewart alleged that Brown had repeatedly ignored his requests to go to the infirmary for treatment on previous occasions. Stewart claims that he repeatedly pressed the call button and waved his medical pass at Brown to no avail. Instead, Brown mocked him, despite the onset of Stewart's asthma attack. Stewart also maintains that he signaled to Brown that he was choking.

Brown, however, maintained that he in no way inhibited Stewart from receiving his treatment. When Stewart requested to go to the infirmary, Brown contends that a number of inmates were in the area because lunch was being served. Brown states that as soon as he was able to remove the inmates from the area, he allowed Stewart to leave. Throughout this time period, Brown claims that Stewart did not appear to be in distress.

No. 13-10139

### 5. *January 4, 2010*

In addition, Stewart alleged that Officers A. Wester and B. Sarkisian ignored him when he had an asthma attack in his cell.[7]  Moreover, Stewart claims that none of the officers were in the vicinity of his cell so as to provide him assistance.  Stewart contends that he flashed the lights in his cell repeatedly to get Wester and Sarkisian's attention.  Ortiz claimed that Stewart also knocked on the door to alert Sarkisian and then asked Ortiz for his help in contacting Sarkisian.  After knocking on the door for approximately six to seven minutes, Sarkisian responded to Stewart and Ortiz.  Ortiz contends that once he told Sarkisian that Stewart was having difficulty breathing, Sarkisian simply turned off the speaker to the cell.  At this point, additional inmates began knocking on their doors to get help for Stewart.  According to Ortiz, Wester then came and called for assistance.  During this process, Stewart alleges that he suffered an intense asthma attack, resulting in a great deal of pain and lack of sufficient oxygen.  Due to the delay in receiving treatment, Stewart argues that Officer Wendy Doan and two others had to place him on a stretcher to receive treatment.  Stewart was transferred to Hendricks Hospital, and he later filed a grievance regarding this incident.

In response, Wester claims that as soon as he observed the lights flashing in Stewart's cell, he sent officers to investigate and opened the cell when they discovered Stewart's condition.  Sarkisian confirms Wester's version of the incident.  According to Sarkisian, Wester sent him to check on Stewart.  When he saw that Stewart was having an asthma attack, Sarkisian claims that he removed Stewart from his cell.

---

[7] Stewart's cellmate, Aaron Ortiz, stated that Stewart had warned Wester of his medical condition before the asthma attack occurred.  We note that, unlike the affidavits provided by the other inmates, Ortiz's affidavit does not completely align with Stewart's version of what transpired.

No. 13-10139

## B. Procedural History

In February 2011, Stewart filed suit against Appellees as well as a number of other prison employees, alleging failure to protect, deliberate indifference to his medical health and safety, failure to train, and conspiracy. The district court dismissed the claims against the other prison employees, leaving only Stewart's claim of deliberate indifference against Appellees remaining.[8] Appellees then moved for summary judgment, arguing, *inter alia*, that they were entitled to qualified immunity. The district court granted summary judgment in favor of Appellees, dismissing Stewart's suit. The district court concluded that Stewart failed to provide sufficient evidence to rebut Appellees' claims of qualified immunity. Stewart filed a motion to reconsider, which the district court denied, and he timely appealed.

## II.    DISCUSSION

Stewart raises several issues on appeal. First, he argues that the district court erred when it granted Appellees' motion for summary judgment because, contrary to the district court's conclusion, he did provide competent summary judgment evidence rebutting Appellees' qualified immunity defense. Stewart further contends that the district court engaged in credibility determinations which were improper at this stage of the litigation. Second, he argues that the district court abused its discretion by not permitting him to depose some of his witnesses and denying his motion to conduct additional discovery. Appellees respond that Stewart has only demonstrated, at most, gross negligence, and that the district court did not abuse its discretion with its discovery rulings.

---

[8] These proceedings were conducted by the magistrate judge with the consent of the parties. For ease of reference, however, we will refer to the magistrate judge as the district court.

No. 13-10139

## A. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard used by the district court. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We draw all reasonable inferences in favor of Stewart, the nonmoving party. *Haverda*, 723 F.3d at 591. "A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion." *Id.* We neither engage in credibility determinations nor weigh the evidence. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 635 (5th Cir. 2011).

## B. Qualified Immunity

When a government official asserts a qualified immunity defense, the plaintiff carries "the burden of negating qualified immunity." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To determine whether Appellees are entitled to qualified immunity, we must ask two questions: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 490 (5th Cir. 2005) (internal quotation marks and citation omitted). "If we . . . answer either of the above questions in the negative, then the defendant is entitled to qualified immunity." *Id.*

The Eighth Amendment is violated when prison guards are deliberately indifferent to the serious medical needs of prisoners. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th 1999) (stating that prison guards are deliberately indifferent

when they "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." (citation omitted)); *see also Williams v. Certain Individual Emp. of the Tex. Dep't of Criminal Justice-Institutional Div. at the Jester III Unit*, 480 F. App'x 251, 256 (5th Cir. 2010) (unpublished) (per curiam). To prove deliberate indifference, Stewart must show that Appellees were aware of "and disregard[ed] an excessive risk to [his] health or safety." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal quotation marks and citation omitted). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks and citation omitted). If the risk is obvious, however, we may infer knowledge. *Id.* "Deliberate indifference is an extremely high standard to meet." *Horn v. Vaughan*, 469 F. App'x 360, 363 (5th Cir. 2012) (per curiam) (unpublished) (citation and internal quotation marks omitted).

A delay in providing medical care violates the Eighth Amendment only when "there has been deliberate indifference [that] results in substantial harm." *Easter*, 467 F.3d at 464 (alteration in original) (emphasis, citation, and internal quotation marks omitted). A medical need is serious if it "is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Lewis v. Evans*, 440 F. App'x 263, 264 (5th Cir. 2011) (per curiam) (unpublished) (internal quotation marks and citation omitted). Stewart must prove "that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 265 (citation and internal quotation marks omitted). However, gross negligence does not constitute deliberate indifference. *Id.*

No. 13-10139

A government official violates clearly established law "if it is sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Easter*, 467 F.3d at 465 (alteration in original) (internal quotation marks and citation omitted). The specific act engaged in by the official need not have been held unlawful. *Id.* Rather, "prior [cases must give] reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (citation and internal quotation marks omitted).

As an initial matter, we note that the district court erroneously found the unsworn affidavits Stewart proffered as well as the factual allegations in Stewart's complaint to be inadequate summary judgment evidence.[9]  While unsworn affidavits are usually insufficient to raise a genuine issue of material fact, *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013), an "unsworn declaration . . . in writing of [a] person which is subscribed by him, as true under penalty of perjury and dated" may substitute for a sworn declaration.  28 U.S.C. § 1746.  Stewart attached a signed declaration to his complaint, stating that, "under the penalty of perjury," the facts alleged in his complaint were "true and correct."  Moreover, Stewart relied on his two unsworn declarations and multiple unsworn affidavits from fellow inmates, which contained declarations that they were "true under penalty of perjury[] and dated." *See* 28 U.S.C. § 1746; *see also Ion*, 731 F.3d at 382 n.2.  Therefore, we will consider the facts Stewart alleges in his verified complaint, his two unsworn declarations, as well as the unsworn affidavits when determining whether he raised a genuine issue of material fact. *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set

---

[9] Notably, Appellees do not attempt to justify the district court's conclusion that Stewart's summary judgment evidence was incompetent.

forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

Viewing the evidence in the light most favorable to Stewart, *see Haverda*, 723 F.3d at 591, it is apparent that summary judgment is inappropriate at this time. The parties present conflicting accounts of what transpired between Stewart and Appellees, thereby rendering any grant of summary judgment improper. *See* Fed. R. Civ. P. 56(a). Whereas Stewart's account of the dates at issue depicts repeated intentional disregard for his health, Appellees' version suggests that the officers merely followed prison protocol and any mistakes were inadvertent.

An issue of material fact exists in regards to whether Appellees were deliberately indifferent to Stewart's health and safety. There is evidence indicating that Appellees repeatedly delayed providing Stewart with medical treatment, although they were aware that he frequently suffered from asthma attacks. *See Williams*, 480 F. App'x at 256 ("A prison guard is deliberately indifferent if he intentionally denies or delays access to medical care." (internal quotation marks omitted) (quoting *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992))). Moreover, the parties agree that Stewart's medical condition was known by the prison guards. Our review of the summary judgment evidence indicates that Appellees also intentionally disregarded the established treatment plan for Stewart. *See Chapman v. Johnson*, 339 F. App'x 446, 448 (5th Cir. 2009) (per curiam) (unpublished) (stating that a defendant is not entitled to summary judgment based on qualified immunity when the defendant knew of prisoner's injury and treatment protocol but failed to follow it); *see also Easter*, 467 F.3d at 465 (holding that summary judgment was improper on qualified immunity grounds when defendant was aware of prisoner's need for medical treatment but failed to provide it). Accordingly, the

district court erred when it granted Appellees summary judgment based on qualified immunity.

## III.    CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment to Appellees on their qualified immunity defense, and we REMAND for further proceedings consistent with this opinion.[10]

---

[10] Because we reverse the district court's grant of summary judgment to Appellees, we need not address the other issue raised by Stewart on appeal regarding the district court's discovery rulings and, thus, decline to do so.